UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 10-2016 - BLG

UNITED STATES OF AMERICA

vs.

WALTER M. ROJAS,

    Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

        Respectfully submitted,

        JEFFREY H. SLOMAN
        UNITED STATES ATTORNEY

BY: _____
    Barbara A. Martinez
    Assistant United States Attorney
    Court ID No. A5500536
    99 N. E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9146
    FAX (305) 536-4676
    Barbara.Martinez2@usdoj.gov

AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>WALTER M. ROJAS<br><br>_Defendant_ | )<br>)<br>) Case No. 10 - 2016 - GARBER<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __1-5-10__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant violated __18__ U. S. C. § __2422(b)__, an offense described as follows:

using a facility and means of interstate commerce, knowingly persuaded, induced, and enticed an individual who had not attained the age of 18 years, to engage in prostitution.

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

FBI Special Agent Regino E. Chavez
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: __01/06/2010__

_____
Judge's signature

City and state: __MIAMI, FL__

U.S. MAGISTRATE BARRY L. GARBER
_____
Printed name and title

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Regino E. Chavez, being duly sworn, depose and say:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. I have worked in this position since November of 2003. I am currently assigned to the Miami Field Office of the FBI and I am a member of the Minor Vice Task Force (MVTF) in South Florida. The MVTF is comprised of state, local, and federal law enforcement which includes the City of Miami Police Department (MPD), Miami-Dade Police Department (MDPD) and Miami Beach Police Department (MBPD), whose purpose is to address the Department of Justice's "Innocence Lost" initiative.[1] I am presently assigned to handle violent crimes, including offenses involving sex trafficking of children, in violation of Title 18, United States Code, Section 1591; enticing a minor to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b); as well as offenses involving transportation for purposes of prostitution, in violation of Title 18, United States Code, Section 2421.

2. I base the facts in this affidavit upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers while in my official capacity. I am submitting this affidavit for the limited purpose of establishing probable cause for a criminal complaint charging WALTER M. ROJAS, date of birth August 10, 1966 (hereinafter referred to as ROJAS), with enticing a minor to engage in prostitution, in violation of 18 U.S.C. 2422(b). This affidavit does not include every fact that I know about this investigation.

3. On January 5, 2010, two detectives with the City of Miami Police Department

---

[1] For purposes of this affidavit, a child is defined as a person who has not attained the age of eighteen years.

observed ROJAS in a white Pontiac Grand Am, bearing Florida license plate 693-VTF, on the premises of the San Juan Motel, located at 2390 SW 8th Street in Miami, Florida. The detectives know the San Juan Motel to be in an area where there is a high incidence of prostitution activity. At the time the detectives made contact with ROJAS, he was accompanied by a young female. The detectives observed many condoms in the vehicle. ROJAS told the detectives that he had an escort service and that he had rented a room at the San Juan Motel. ROJAS also told the detectives that one of his escorts was in the room at the time. Officers of the MPD later entered the motel room and found a minor female, C.S. (hereinafter referred to as C.S.). C.S.' date of birth is December 20, 1992 and is 17 years old.

    4.    At the scene where C.S. was found and later at the police station on January 5 and 6, 2010, C.S. made statements and among other things, C.S., said the following:

    a.    C.S. was a prostitute and ROJAS was her pimp. She met ROJAS on or about June or July of 2009. C.S. began to work for ROJAS at his cellular telephone company in Miami as a sales representative. When C.S. began to work for ROJAS, she told him that she was 19 years old and showed him a birth certificate from Nicaragua that falsely stated that she had been born on December 20, 1990. However, approximately one week later C.S. told ROJAS that she was actually 16 years old. During the first days C.S. was working for ROJAS he talked to her about how much money she could make if she would be willing to work as a prostitute for him, but C.S. continued to work only as a sales representative for ROJAS.

    b.    During the time C.S. was working as a sales representative for ROJAS, she became sexually involved with him and had sex with ROJAS approximately twice a week throughout her relationship with him.

2

c. While C.S. was working for ROJAS as a sales representative, she also began to work for an escort service run by a Hispanic male and a Hispanic female. C.S. worked for the online escort service for approximately one week as a prostitute before ROJAS found out about what she was doing. ROJAS told C.S. to stop working for the online escort service and to start working as a prostitute for him. C.S. agreed to work for ROJAS.

d. C.S. began to work as a prostitute for ROJAS approximately 22 days ago. ROJAS told C.S. to charge $150.00 to spend one hour with a client and have sex with him and $100.00 to spend half-an-hour with a client and have sex with him. ROJAS told C.S. that she had to have sex with the clients. ROJAS also told C.S. that they would share all the money she made and that he would take half of the money, and that C.S. would keep the other half.

e. ROJAS provided C.S. with a cellular telephone with call number xxx-xxx-3508. ROJAS told C.S. to use cellular telephone number xxx-xxx-3508 in order to talk to the prostitution clients. C.S. spoke to the prostitution clients, but ROJAS decided when C.S. would meet the clients. ROJAS also decided at which hotels C.S. would meet the clients in order to have sex with them. ROJAS paid for the hotels with cash and oftentimes used the name "CARLOS" to rent the rooms. The cost of the hotel rooms was paid by ROJAS and C.S. in equal parts. ROJAS used several hotels in the Miami area including the Days Inn and the San Juan Motel.

f. ROJAS also advertised C.S. on the website Backpage. The internet site "http://www.backpage.com" is a collection of internet-based online resources, including classified ads, forums, and various email services. One of the advertisements posted by ROJAS read as follows: "Sexy Colombian Princess-GFE-New 2 the Bizz-Special $100 Today

3

Only!!!-19," and listed cellular telephone number xxx-xxx-3508 as the contact number. ROJAS posted all the advertisements on Backpage himself using his personal laptop computer. The cost of the advertisements was shared by ROJAS and C.S. in equal parts. ROJAS paid for the advertisements using American Express gift cards. ROJAS bought the gift cards, but C.S. and ROJAS each paid half of the cost of the gift cards.

  g. Once C.S. began prostituting for Rojas, Rojas stopped employing C.S. as a sales representative. During the 22 days that C.S. was working for ROJAS as a prostitute, she had two to four clients per day. ROJAS made C.S. work from Monday to Saturday from 10:00 a.m. or 12:00 p.m. until 10:00 p.m. or 12:00 a.m. ROJAS made C.S. remain on stand-by even when she did not have clients scheduled for prostitution dates. ROJAS only let C.S. rest on Sundays.

  5. ROJAS was also interviewed on January 6, 2010, and, after waiving his rights, stated that he had had sex with C.S. ROJAS also consented to a search of his cellular telephone with call number xxx-xxx-7711. A search of cellular telephone number xxx-xxx-7711, revealed that it contained several pictures of C.S. The pictures were taken by ROJAS and depict C.S. in bras and panties. Several of the Backpage advertisements posted by ROJAS were also retrieved and it was observed that the pictures used in the Backpage advertisements were the same pictures observed in cellular telephone xxx-xxx-7711.

  6. Law enforcement officials recovered cellular telephones from C.S. and ROJAS, as well as ROJAS' laptop computer. The cellular telephones and the laptop computer are currently in the custody of the affiant.

  7. Based upon my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that there is probable cause to believe that WALTER M.

ROJAS, using a facility and means of interstate commerce, did knowingly persuade, induce, and entice an individual who had not attained the age of 18 years, to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b).

Further affiant sayeth naught.

REGINO E. CHAVEZ, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me
this 6 day of January 2010 in Miami, Florida.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

5